IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crim. No. 1:09-CR-384-01** |
| | : | |
| **v.** | : | |
| | : | |
| | : | **Judge Sylvia H. Rambo** |
| **JOSEPH W. NAGLE** | : | |

# M E M O R A N D U M

Defendant Joseph W. Nagle, who was convicted of twenty-six counts related to his participation in an ongoing fraud on the Disadvantaged Business Enterprises program, filed a motion requesting his release from prison pending appeal (Doc. 358), which the government opposes (Doc. 363). For the reasons stated herein, the court finds that Defendant has failed to demonstrate a valid basis for his release, and will accordingly deny the pending motion.

## I.      Background

The factual background was set forth at length in this court's memorandum accompanying its order denying Nagle's post-trial motions. *See generally United States v. Nagle*, Crim. No. 09-cr-0384-01, 2013 WL 3894841 (M.D. Pa. July 26, 2013). The court will therefore recite only a short summary of the facts necessary for purposes of deciding the matter *sub judice*.

Defendant was convicted at trial for his role in a massive fraud perpetrated against the Disadvantaged Business Enterprise ("DBE") program, and the amount of loss attributable to his conduct was calculated as $53.9 million, which, pursuant to U.S.S.G. § 2B1.1(b)(1)(M), resulted in a 24-level increase to his Offense Level Computation. Defendant objected to the method utilized by the probation office and the government in reaching these calculations, arguing that the

loss amount attributable to his conduct was $850,931.20. A hearing on Defendant's objections to the loss amount was held on February 26, 2014.

On May 7, 2014, the court issued an opinion overruling Defendant's objections to the loss calculation, in which the court determined that the amount of loss for sentencing guideline purposes was $53.9 million, which represented the entire face value of the government benefits obtained as a result of the fraudulent contracts. *United States v. Nagle*, Crim. No. 09-cr-0384-01, Doc. 281, 2014 WL 1808193 (M.D. Pa. May 7, 2014). At Defendant's June 30, 2014 sentencing hearing, the court reiterated its conclusion as to the loss attributable to Defendant's conduct, but then granted a variance and a downward departure on the basis that the guideline range of 97 to 121 months overstated the seriousness of the offense. The ten-level downward departure resulted in a guideline range that would have applied had the court found the loss figure for which Defendant argued. Accordingly, the court sentenced Defendant to undergo a term of imprisonment of 84 months and to pay a fine of $25,000.00. (Doc. 297.) Defendant filed his notice of appeal on July 1, 2014. (Doc. 301.)

On appeal, the Third Circuit reversed this court's finding as to loss, holding that in a DBE fraud case the court should calculate the amount of loss under § 2B1.1 of the United States Sentencing Guidelines "by taking the face value of the contracts and subtracting the fair market value of the services rendered under those contracts," which includes "the fair market value of the materials supplied, the fair market cost of the labor necessary to assemble the materials, and the fair market value of transporting and storing the materials." *United States v. Nagle*, 803 F.3d 167, 181 (3d Cir. 2015). The Court of Appeals added that, "[i]f possible and when

relevant, the District Court should keep in mind the goals of the DBE program that have been frustrated by the fraud." *Id*. Because of its concern that the incorrect loss calculation may have affected Defendant's sentence, the Third Circuit remanded to this court for resentencing. *Id*. at 183.

On November 30, 2015, this court issued an opinion rejecting Defendant's argument that, based on the Third Circuit's reversal and remand, the loss attributable to his conduct should be zero. *See United States v. Nagle*, Crim. No. 09-cr-384, 2015 WL 7710467 (M.D. Pa. Nov. 30, 2015). Instead, the court found that the appropriate loss amount was $850,931.20, which represented the face value of the DBE contracts less the fair market value of the services provided by Defendant, or, in other words, the profits that legitimate DBEs were deprived of due to Defendant's fraud. *Id.* at *5. The court resentenced Defendant to the same 84-month sentence originally imposed, and invited Defendant to request a new sentencing hearing, if desired. Instead, Defendant filed a notice of appeal to the Third Circuit on December 8, 2015 (Doc. 349), as well as the instant motion for release pending appeal on February 25, 2016 (Doc. 358). The government filed its opposition to Defendant's motion for release on March 8, 2016. (Doc. 363.) Thus, the matter is ripe for disposition.

## II.        Legal Standard

Defendant's motion for release is governed by 18 U.S.C. § 3143(b), which provides, in pertinent part, as follows:

> (1)    Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –

> (A)     by clear and convincing evidence that the
> person is not likely to flee or pose a danger to the
> safety of any other person or the community if
> released under section 3142(b) or (c) of this title;
> and
>
> (B)     that the appeal is not for the purpose of delay
> and raises a substantial question of law or fact likely
> to result in –
>
>> (i)    reversal,
>>
>> (ii)   an order for a new trial,
>>
>> (iii)  a sentence that does not include a term of
>> imprisonment, or
>>
>> (iv)   a reduced sentence to a term of
>> imprisonment less than the total of the time
>> already served plus the expected duration of
>> the appeal process.

18 U.S.C. § 3143(b).

The Third Circuit has explained that, in reviewing a motion for release

pending appeal, a district court must:

> Under [§ 3143], after first making the findings as to flight,
> danger, and delay, a court must determine that the question
> raised on appeal is a "substantial" one, *i.e.*[,] it must find
> that the significant question at issue is one which is either
> novel, which has not been decided by controlling
> precedent, or which is fairly doubtful.

*United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).  Absence of precedent is not

enough; the question must still be "significant."  *See United States v. Smith*, 793

F.2d 85, 89 (3d Cir. 1986); *see also United States v. Cordaro*, Crim. No. 10-cr-0075,

2012 WL 3113933, *5 (M.D. Pa. July 31, 2012).  A question is significant if, for

example, the issue is "debatable among jurists" or "adequate to deserve

4

encouragement to proceed further." *See Smith*, 793 F.2d at 90 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also United States v. Brown*, 356 F. Supp. 2d 470, 476 (M.D. Pa. 2005); *Cordaro*, 2012 WL 3113933 at *5.

After a court finds that the question on appeal is substantial, it must still determine "whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." *Miller*, 753 F.2d at 23. This standard does not require the court to conclude that its own orders are likely to be reversed. Rather, the phrase "likely to result in reversal or an order for a new trial" signifies that a court "may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.*

Importantly, because there is a presumption of detention after sentencing, a defendant bears the burden to prove that bail pending appeal is warranted under § 3143. *Id.* at 22, 24; *United States v. Bissell*, 954 F. Supp. 903, 906 (D.N.J. 1997) ("§ 3143(b) creates a presumption against postconviction release pending appeal . . . . [T]here is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances.").

## III.       Discussion

As an initial matter, the Government has previously conceded, in response to Defendant's prior motion for release, that Defendant posed no risk of flight or danger under subpart (a) of § 3143 (Doc. 328, p. 5 of 23), and has implicitly conceded so in response to the instant motion by agreeing that "the sole issue is whether [Defendant]'s appeal raises a substantial issue" (Doc. 363, p. 4 of 9).

Indeed, as the court has previously found, the facts underlying this case demonstrate that Defendant is not a violent man, and Defendant voluntarily surrendered into custody. Thus, § 3143(a) is clearly satisfied.

Defendant's lone argument in support of his motion for release pending appeal is that the Third Circuit is likely to remand for resentencing based on a loss amount of zero, which would result in a sentence of time served or even less than time served when including the time necessary to decide the appeal. (*See* Doc. 358, p. 3 of 4.)  This court disagrees.

On remand, this court found that the amount of loss attributable to Defendant's conduct was $850,931.20.  As the court explained:

> The amount of loss resulting from Defendants' fraudulent scheme . . . is not simply a question of the pecuniary harm that USDOT may have suffered.  As the Third Circuit mandated in its appellate opinion, this court must determine loss by subtracting the fair market value of the services performed by Defendant[] from the full contract price, while also 'keep[ing] in mind the goals of the DBE program that have been frustrated by the fraud.'

*Nagle*, 2015 WL 7710467, at *4 (quoting *Nagle*, 803 F.3d at 181).  Based on the direction from the Third Circuit, this court found that the lost profits that legitimate DBEs would have received for completing the contracts, *i.e.*, the difference between the face value of the contracts and the fair market value of the supplies and labor needed to complete the projects, was a fair measure of the loss.  *Id*.  Because this court believes it has correctly interpreted and applied the Third Circuit's instructions as to calculating the loss in a DBE fraud case such as this, there is no basis upon which to presume that this court's loss finding as to Defendant is "likely to result in reversal."  18 U.S.C. § 1341(b); *Miller*, 753 F.2d at 20.

The only remaining issue for the court to consider is what effect, if any, the 2015 amendment to the sentencing guidelines may have on Defendant's sentence.  At his original sentencing, after the court departed downward to equate with a loss amount of $850,931.20, Defendant had a Criminal History Category of One and an Offense Level of 30, for a suggested guideline range of 97 to 121 months incarceration.  The 2015 amendment to the sentencing guidelines reduced Defendant's Offense Level to 29, for a new guideline range of 87 to 108 months incarceration.  Defendant's sentence of 84 months, therefore, is still below the suggested guideline range and need not be disturbed.  Because a sentence of 84 months is still appropriate, the 17 months Defendant has already spent incarcerated, even with good time credit, will come nowhere close to eclipsing his total sentence by the time his appeal is decided.

## III.        Conclusion

Based on the foregoing, the court does not find it likely that the Third Circuit will reverse the loss finding of $850,931.20 attributable to Defendant's conduct.  In addition, Defendant's current sentence is below the amended guideline range and need not be reduced.  Accordingly, Defendant's motion for release pending appeal will be denied.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  March 21, 2016.